**In re LCL INCOME PROPERTIES, L.P. VI, Debtor.**

**Bankruptcy No. 94–14473.**

United States Bankruptcy Court, S.D. of Ohio, Western Division.

July 11, 1995.

Order Supplementing Decision July 20, 1995.

John C. Greiner, Cincinnati, OH, for debtor.

Richard Boydston, Cincinnati, OH, for Clough Creek Ltd.

Rick D. DeBlasis, Cincinnati, OH, for Beal Bank.

---

**2.** The Government's motion for leave to file its brief out of time is **GRANTED.**

## DECISION and ORDER
## RE CONFIRMATION

BURTON PERLMAN, Bankruptcy Judge.

Debtor in this single asset Chapter 11 real estate case filed a disclosure statement and plan. This case was set on a fast track by the court, and hearing on the disclosure statement and on confirmation were scheduled for the same time. Objections to the plan were lodged by Beal Bank S.S.D., the first mortgagee, and also by Clough Creek Limited ("Limited"), holder of a second mortgage. Prior to the hearing, debtor modified its plan by setting up a new class consisting of an otherwise unsecured creditor holding a certificate of judgment lien. Limited filed a motion calling this modification into question, and as well filed a specific objection to confirmation because of this modification. Additionally, at the hearing, debtor orally moved and expects forthwith to move in writing, for a further modification of its plan, so that unsecured creditors in Class 4 are paid interest on their claims at 9%.

A historical note of the case should be inserted here, as to two prior events in the court in this case. First, debtor is and throughout the pendency of the case, and indeed, for the past two years, has been out of possession of the Clough Creek Apartments, the property here involved. (Such property will hereafter be referred to as "the subject property.") The subject property consists of ten units which have a total of 164 residential apartments. Secondly, Limited, the objector, purchased the claims of a sufficient number of creditors in Class 4 to control that class. That class has voted against confirmation.

Debtor earlier in the case moved that Limited be designated pursuant to § 1126(e) for this action. The court denied the motion. In connection with this point, a question about the existence of a bar date for claims in the case arose. FRBP 3003(c)(3) provides that the court shall fix a bar date. This court has done so at LBR 3.13 which provides that proofs of claim must be filed no later ·than the later of ninety days after the first date set for the § 341 meeting of creditors, or ninety days after the filing of an amendment to schedules. In the present case, debtor did not file its schedules until after the ninety days for the § 341 meeting of creditors had passed. At the hearing, we informed the parties that it was the ruling of the court that there was presently no bar date applicable to claims in this case, because it would be manifestly unfair to utilize the ninety day after the first meeting of creditors bar date, because creditors were not informed of the case until after that period had passed. Clearly, this arm of LBR 3.13 contemplated that schedules would be filed within the times contemplated in FRBP 1007(c). Nor is the other limitation in LBR 3.13(a) applicable here, because there were no amendments to the schedules. In these circumstances, we informed the parties that we had concluded that there was presently no applicable bar date. Consequently, the filing of the transferred claims by Limited were timely.

This court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this District. This is a core proceeding arising under 28 U.S.C. § 157(b)(2)(L).

At the hearing, the objection to confirmation by Beal Bank was dealt with and disposed of by agreement of debtor to modify its plan. Debtor had contemplated that Beal Bank, holder of the first mortgage, be unimpaired. Beal Bank took issue with this by pointing out that a provision of the plan provided for prepayment without penalty, while its note provided otherwise. Debtor conceded the point, and agreed to modify its plan by limiting the prepayment without penalty provision so that it did not apply to Beal Bank. Thereupon, Beal Bank withdrew its objection.

Debtor then presented evidence by way of the testimony of Jacob Feldman, comptroller of LCL Management, the debtor affiliated entity which would undertake management of the subject project if debtor regains possession, and also by Elliot Liebowitz, general partner of the organization which is the debtor limited partnership, and also a principal in LCL Management. The purpose of the testimony of these witnesses was to establish that debtor's plan complied with all the appli-

cable statutory requirements. We hold that they were successful in establishing a prima facie case to this effect.

We turn then to the objections by Limited, and address first what is a fundamental matter in this case. By its witnesses, Limited questioned the validity of the projections presented by debtor in its disclosure statement for the years 1995, 1996, and 1997. Particularly, the thrust of the evidence offered by Limited was that, first, rental income was overstated, and capital expenses were understated. As to rental income, debtor had based its projection for 1995 on the occupancy rate of 95% for the subject property which was true for December 1994 as reflected in the receiver's report, remembering that it is the receiver which is in possession. The evidence of Limited was that the occupancy rate several months later had declined to 85%, and therefore the rental income projected for 1995 is unrealistically high. After a careful review of the evidence in the record, we are unpersuaded that debtor's projection of rental income for 1995 is invalid. Further, Limited questions the projected capital expense figures in the debtor's figures for 1995 and years thereafter. Again, we are unpersuaded that the figures offered are not realistic, and we accept the testimony of debtor that the capital needs can be made over a period of time rather than all at once. In part, this is based upon the fact that the receiver made very large expenditures for carpeting in 1994, and consequently, a capital expense for carpet will be less for the following year. As a result of all the foregoing, we hold that debtor's plan is feasible.

In addition to its attack on debtor's plan as not feasible, Limited argues that the requirement of § 1129(a)(10), that there be an accepting impaired class is not met. The step which debtor took of modifying its plan to separately classify the Bailey claim, distinguishing it from other unsecured claims because Bailey held a certificate of judgment lien, was taken for the purpose of creating an accepting impaired class. Bailey has accepted the plan. Limited objects to this modification, asserting that, first, that Bailey's lien is unperfected and therefore it is improper to

regard him as a secured creditor. Secondly, Limited argues that if Bailey is recognized as a secured creditor for classification purposes, there is another creditor in the very same position, and that other claim has voted against the plan. The requirement, then, says Limited, relying on 11 U.S.C. § 1126(c), that there be an accepting impaired class is not met, because for acceptance there must be more than one-half in number of the allowed claims of the class voting in favor.

In this case, we have earlier made reference to the step taken by Limited to acquire claims sufficient to cause a negative vote on the plan by Class 4. The step by debtor in creating the new class with the Bailey claim was in reaction to that step by Limited. This court disfavors technical maneuvering, and believes that matters should depend for decision upon the real issues in a case. Where, as here, one party makes a move for tactical reasons only, to which the other party responds by a counterbalancing tactical move, we are not inclined to look too closely at whether debtor has jumped all the hurdles under state law to qualify its claim. Had Limited not taken the step that it did in respect to Class 4 creditors, that class might well have voted in favor of the plan. We hold that debtor's step in setting up a separate class consisting of a creditor holding a judgment lien is sufficient to justify the existence and legitimacy of that class. The second ground by Limited, that the other creditor holding a like judgment lien voted against the plan, cannot avail Limited, for that creditor has taken no step to separate itself from Class 4.

Finally, we must deal with the further modification of the plan proposed by the debtor, that unsecured creditors, who are to receive 100% in deferred payments under the plan, be paid 9% interest, and the implications of that proposed modification. The structure of debtor's plan leaves the position of equity unchanged, that is, the debtor continues to own the subject property. That outcome could not be challenged (without resort to cramdown) if the unsecured creditor class were unimpaired. Debtor's proposed modification appears to be a concession that the unsecured creditor class is im-

paired. We reach this conclusion because the proposed modification appears to have for its purpose a compliance with § 1129(b)(2)(B)(i). The Code there provides:

\* \* \* \* \* \*

(b)(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

\* \* \* \* \* \*

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

\* \* \* \* \* \*

The question, then, is whether by its proposed modification, debtor has succeeded in meeting this provision. Debtor has indeed provided for the payment of unsecured creditors at 100%. Such payments are not, however, payable in cash on the effective date. Instead, deferred payments over a period of time are provided. In order to meet the quoted language where deferred payments are contemplated, interest must be paid. Debtor's modification provides for interest at 9%. Limited questions the adequacy of 9% interest. In closing argument, its counsel asserted that interest at 11.5% was required. We find the present record to be inadequate to establish either proposal as the correct interest rate. Accordingly, we set this matter for further hearing *on the interest issue* only, on Wednesday, July 19, 1995, beginning at 10:00 a.m., in Courtroom 817, U.S. Bankruptcy Court, Atrium Two, 8th Floor, 221 East 4th Street, Cincinnati, Ohio.

So Ordered.

## SUPPLEMENTAL ORDER

In our Decision and Order Re Confirmation entered July 11, 1995, we resolved all issues raised by Clough Creek Limited ("Limited") to confirmation, except for one issue. Referring to § 1129(b)(2)(B)(i), we said that the record was inadequate to estab-lish an interest rate on account of the plan provision for deferred payments. We set a further hearing for July 19, 1995, limited to that issue only, and that hearing was held. Counsel for the debtor, as well as counsel for Limited, appeared.

In our prior decision we said:

. . . Debtor's modification provides for interest at 9%. Limited questions the adequacy of 9% interest. In closing argument, its counsel asserted that interest at 11.5% was required. We find the present record to be inadequate to establish either proposal as the correct interest rate.

■ At the July 19, 1995 hearing, counsel for both parties agreed that the proper rate of interest to be applied was the market rate. Neither party, however, presented evidence to establish such a rate. Both parties at the hearing made reference to a rate applied by the state courts of Ohio on accounts in the absence of a written contract otherwise. See ORC § 1343.03. The interest rate prescribed by that section is 10%. Particularly in view of the record before us, we find this to be a reasonable basis upon which to establish market rate for purposes of § 1129(b)(2)(B)(i), and hold that 10% is the "correct interest rate" to be applied in the case before us.

This Supplemental Order, together with our Decision and Order Re Confirmation entered July 11, 1995, constitute a final order. On July 19, 1995, Limited filed a motion for reconsideration. This is to be regarded as though filed subsequent to final order. Limited shall have until July 28, 1995 to supplement its motion for reconsideration, or to advise the court that it does not wish to do so. Debtor shall then have until August 7, 1995, to respond to the motion for reconsideration.

So Ordered.